# United States Court of Appeals
## For the First Circuit

---

No. 25-1820

ISHMAEL KOIGOR BANGS,

Petitioner,

v.

TODD BLANCHE, Attorney General,*

Respondent.

---

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

---

Before

Rikelman, Dunlap, Circuit Judges,
and Antongiorgi-Jordán,† District Judge.

---

Nathan P. Warecki, with whom Ronaldo Rauseo-Ricupero, and Nixon Peabody LLP, were on brief, for petitioner.

Gilles Bissonnette, SangYeob Kim, Chelsea Eddy, Caroline Meade, and American Civil Liberties Union of New Hampshire, on brief for First Circuit-Based Immigration Law Practitioners, Nonprofit Organizations, Immigration Law Professors, Law School Clinics, and Law Firms, as amici curiae, in support of petitioner.

Jessica R. Lesnau, Trial Attorney, Office of Immigration Litigation, with whom Brett A. Shumate, Assistant Attorney General, Civil Division, and Stephen J. Flynn, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Todd Blanche is automatically substituted for former Attorney General Pamela J. Bondi as respondent.

† Of the District of Puerto Rico, sitting by designation.

August 11, 2026

**DUNLAP**, **Circuit Judge**. In this immigration appeal, we are called upon to decide whether a conviction under a New Hampshire statute that criminalizes retaliation against a witness is an aggravated felony "relating to obstruction of justice" under 8 U.S.C. § 1101(a)(43)(S). It is not. As a result, Petitioner Ishmael Koigor Bangs ("Bangs") is not deportable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) based on his conviction for retaliation. The Board of Immigration Appeals' ("BIA") decision must therefore be vacated.

**I.**

Bangs is a Sierra Leonean native and Liberian citizen who, since 2004, has lived in New Hampshire. In his early years in Sierra Leone, Bangs enjoyed a relatively calm upbringing on account of his father's close friendship and employ with the former president of Sierra Leone, Valentine Strasser. But the calm did not last. A coup by the present Sierra Leonean government ousted Strasser, and members of the new government began to target and execute those associated with the Strasser regime. Bangs' father fled the country, abandoning him and his mother.

Bangs was thrust into further turmoil when, at six years old, he was kidnapped and compelled to serve as a child soldier in a rebel force. He was beaten, burned, drugged, and forced to endure horrific conditions of violence. Eventually, his mother rescued him and brought him to a refugee camp. Bangs and his

mother were admitted to the United States as refugees in 2004, and were granted lawful permanent resident status in 2008.

Bangs' integration into the United States, however, was fraught, and in 2005 he was sent to the first of three youth detention facilities in which he would spend the next few years of his life. After his release, Bangs assaulted a friend whom he believed had reported him to a Macy's store security guard for shoplifting; he forced the friend to strip naked, glued the friend's mouth shut, dripped melted plastic on his body, and burned him with a heated knife. For these acts, Bangs pled guilty to witness tampering and some of the other crimes with which he was charged under New Hampshire state law. A state court sentenced Bangs to 17 years imprisonment, which was later reduced to lesser time.

In 2024, the federal government initiated removal proceedings against Bangs due to his witness tampering conviction. Bangs contested his removability and asserted entitlement to deferral of removal under the Convention Against Torture ("CAT"). The Immigration Judge ("IJ") found Bangs removable but nonetheless found that Bangs was entitled to deferral of removal under CAT because it is more likely than not that he would face torture if removed to Sierra Leone. On review, the BIA agreed that Bangs was removable because of his witness tampering conviction, but reversed the IJ's CAT finding. Bangs seeks review of the BIA's

decision, including the BIA's determinations as to both removability and CAT deferral of removal. We have jurisdiction pursuant to 8 U.S.C. § 1252.

**II.**

In this case, the determinative question is whether federal law dictates that Bangs is removable because of his state crime conviction for witness tampering. See N.H. Rev. Stat. § 641:5(II). A person is guilty of this class B felony under New Hampshire law, and is therefore subject to imprisonment for more than one year but not more than seven years, id. § 625:9(III)(a)(2), when "[h]e commits any unlawful act in retaliation for anything done by another in his capacity as witness or informant," id. § 641:5(II).[1] A conviction under this statute has potential immigration implications because federal law authorizes the removal of "[a]ny alien who is convicted of an aggravated felony at any time after admission." 8 U.S.C. § 1227(a)(2)(A)(iii). An "aggravated felony" includes "an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year." Id. § 1101(a)(43)(S) (emphasis added). Both the IJ and BIA concluded that Bangs' conviction under

[1] There are two other paths to conviction under N.H. Rev. Stat. § 641:5. Subsections I and III of the statute, however, are not at issue. Bangs was charged and convicted of violating only subsection II. Our decision relates only to that provision.

N.H. Rev. Stat. § 641:5(II) is a predicate "offense relating to obstruction of justice" that renders him removable. We review that legal conclusion de novo. Silva v. Garland, 27 F.4th 95, 101 (1st Cir. 2022); see Lecky v. Holder, 723 F.3d 1, 4 (1st Cir. 2013).

We apply the "categorical approach" to determine whether a state crime is a predicate falling within the meaning of a generic federal offense -- here, an "offense[] 'relating to obstruction of justice.'" See Pugin v. Garland, 599 U.S. 600, 602-03 (2023) (quoting 8 U.S.C. § 1101(a)(43)(S)); Silva, 27 F.4th at 101. Under that approach, we "look to 'the elements of the [state] statute of conviction, not to the facts of [the] defendant's conduct.'" Pugin, 599 U.S. at 603-04 (quoting Taylor v. United States, 495 U.S. 575, 601 (1990)). We compare the elements of the state crime to the elements of the federal crime: a predicate crime fits within the generic federal "offense relating to obstruction of justice" if "its elements are the same as, or narrower than, those of the generic [federal] offense." Mathis v. United States, 579 U.S. 500, 504 (2016) (emphasis removed). "But if the crime of conviction covers any more conduct than the generic offense, then it is not an" offense relating to obstruction of justice "even if the defendant's actual conduct (i.e., the facts of the crime) fits within the generic offense's boundaries." Id.; see Rodríguez-Méndez v. United States, 134 F.4th 1, 8 (1st Cir.

2025). Put another way, if there is even one way for a state statute to be violated without meeting the elements of the generic federal offense, no conviction under that statute can serve as a predicate for the generic federal offense. See Moncrieffe v. Holder, 569 U.S. 184, 190-91 (2013).

Bangs argues that the elements of a federal "offense relating to obstruction of justice" are narrower than the elements of N.H. Rev. Stat. § 641:5(II) because the federal offense requires a specific intent to interfere with a legal proceeding, while the New Hampshire statute criminalizes acts of pure revenge against a witness absent any intent to interfere with a legal proceeding.[2] He is correct.

Although § 1101(a)(43)(S) does not define "an offense relating to obstruction of justice," the Supreme Court has had occasion to survey its metes and bounds -- and, in so doing, has provided us with guidance that leads us to conclude that the New Hampshire law lacks the mens rea requirement that is essential to the generic federal offense. In Pugin, the Court considered whether an "offense[] 'relating to obstruction of justice'"

[2] Bangs also argues that the generic federal "offense relating to obstruction of justice" refers to obstruction of an official investigation, while the New Hampshire statute covers retaliation against witnesses who participated in unofficial, private investigations. Because we conclude that New Hampshire law clearly supports Bangs' first argument for the reasons we will explain, we need not address his second theory.

requires a nexus to an ongoing or pending investigation. 599 U.S. at 602. In concluding that it does not, the Court expressly approved of the Solicitor General's position that such an offense "require[s] an intent to interfere with the legal process." Id. at 607 n.2. That mens rea requirement, the Court explained, is necessary to prevent an overbroad reading of the statute and "ensures that § 1101(a)(43)(S) will not sweep in offenses that are not properly understood as offenses 'relating to obstruction of justice.'" Id.

We have similarly observed that the generic federal offense has an intent element. In Silva, we considered the same generic federal offense at issue in this case and cited a BIA decision which acknowledged that generic obstruction of justice "covers crimes involving (1) an affirmative and intentional attempt (2) that is motivated by a specific intent (3) to interfere with an investigation or proceeding." 27 F.4th at 110 (emphases added) (citation modified) (quoting Matter of Valenzuela Gallardo, 27 I. & N. Dec. 449, 456 (B.I.A. 2018), underlying removal order vacated in Valenzuela Gallardo v. Barr, 968 F.3d 1053 (9th Cir. 2020)).[3] We thus agree with Bangs -- as did the government at oral

[3] In Silva v. Garland, we also cited multiple contemporary definitions of "obstruction of justice" that emphasize that obstruction encompasses "willful" acts interfering with the process of justice. 27 F.4th 95, 102 (1st Cir. 2022) (citing "Obstruction of Justice," Merriam-Webster's Dictionary of Law 337

argument -- that the generic federal offense requires a specific intent to interfere with legal process.

The next step of the analysis, then, is to determine whether the "minimum conduct criminalized by the [New Hampshire] statute" of conviction also imposes such a requirement. Id. at 109 (citing Moncrieffe, 569 U.S. at 191). We begin, as we must, with the plain text of § 641:5. See Mellouli v. Lynch, 575 U.S. 798, 805 (2015) (noting that the categorical "approach looks to the statutory definition of the offense of conviction" (emphasis added)); Swaby v. Yates, 847 F.3d 62, 66 (1st Cir. 2017) (looking to the "plain terms" of the state law at issue to determine whether it was a categorical match with the federal law).

Section 641:5(II) says nothing about intent to interfere with legal process. Rather, it penalizes any "unlawful act in retaliation for anything done" by a person who has acted as a witness or informant. N.H. Rev. Stat. § 641:5(II). Granted, as the BIA observed, witness retaliation "displays a fundamental disregard for the rule of law that interferes with the judicial system"; but retaliation does not necessarily entail an intent to undermine the legal process -- rather, it may be motivated by pure revenge. The plain text of § 641:5(II) therefore does not indicate that any intent to interfere with legal process is required for

(1996), and "Obstruction of Justice," B. Garner, A Dictionary of Modern Legal Usage 611 (2d ed. 1995)).

conviction. That distinguishes it from the accessory-after-the-fact statute addressed in Silva, which criminalized aiding a person who committed a felony "with intent that he shall avoid or escape detention, arrest, trial or punishment." 27 F. 4th at 98-99 (quoting Mass. Gen. Laws ch. 274, § 4).

In any event, we need not rely solely on our own interpretation of the text of § 641:5(II) because the New Hampshire Supreme Court has already upheld a conviction under § 641:5(II) wherein the defendant lacked any specific intent to interfere with a legal process. See Commissioner v. Est. of Bosch, 387 U.S. 456, 465 (1967) ("[A] State's highest court is the best authority on its own law."). In State v. Baird, the defendant -- Baird -- was investigated by the New Hampshire Division for Children and Youth Services for having sexually abused his daughter. 581 A.2d 1313, 1314 (1990). Baird's daughter participated in the investigation, which eventually led the state to initiate an abuse or neglect hearing. Id. The hearing concluded with Baird's admission of abuse and agreement to avoid having any contact with his daughter for at least one year. Id. Two weeks after the conclusion of proceedings, Baird directed his son to disseminate criminally defamatory materials about his daughter to his daughter's friends. Id. The State then prosecuted Baird under § 641:5(II), alleging that he had retaliated against his daughter for her participation

as a witness in the investigation. Id. At trial, the jury heard that Baird's justification for disseminating the defamatory material was "to get even with [his daughter] for what she did to him." Id. (alteration in the original). Baird was convicted, and the New Hampshire Supreme Court affirmed. Id. at 1314-15, 1317.

Baird establishes that "the least serious conduct for which there is a 'realistic probability' of [a] charge and conviction" under § 641:5(II) does not require a specific intent to interfere with legal process. See Silva, 27 F.4th at 109 (quoting United States v. Starks, 861 F.3d 306, 315 (1st Cir. 2017)); cf. Armenta-Lagunas v. Holder, 724 F.3d 1019, 1024 (8th Cir. 2013) (concluding that Nebraska's witness tampering statute was "an offense relating to obstruction of justice" because the Nebraska Supreme Court had interpreted the statute to require a "specific intent to interfere with the process of justice" (citation omitted)). Neither the trial court nor the New Hampshire Supreme Court required a showing of intent to interfere with the legal process to sustain the conviction. The only intent the New Hampshire Supreme Court recognized was Baird's admission that he acted for purposes of revenge. Baird, 581 A.2d at 1314. And the court affirmed the prosecution's arguments that the "essential element[] of its witness or informant tampering charge," as to intent, was "that Mr. Baird harbored a desire to retaliate against

his daughter for her having reported his conduct to authorities and having subjected him to the entire ordeal." Id. at 1316.[4]

We conclude that § 641:5(II) "covers . . . more conduct than the generic offense," Mathis, 579 U.S. at 504, and so is not an "offense relating to obstruction of justice" within the meaning of 8 U.S.C. § 1101(a)(43)(S). The government has thus failed to establish that Bangs committed an "aggravated felony" for which he would be removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). We therefore need not reach the propriety of the BIA's determination regarding CAT deferral.

## III.

We **grant** Bangs' petition for review, **vacate** the BIA's decision, and **remand** this case for proceedings consistent with our decision.

[4] We note that the BIA did not grapple with State v. Baird, or even cite the case. Neither did the IJ. In fact, the IJ mistakenly cited elements of § 641:5(I), instead of § 641:5(II), in its analysis. The government's briefing before our court also ignored Bangs' argument regarding Baird.